Alise Johnson, Esq.
Email: johnsonali@sec.gov
Attorney for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Florida Bar No. 0003270

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT JOSEPH ARMIJO AND JOSEPH FINANCIAL, INC.,<br><br>Defendants. | Case No.: '21CV1107 TWR RBB<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL** |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**INTRODUCTION**

1. From approximately February 2016 through February 2020, Defendants Robert Joseph Armijo ("Armijo") and his company Joseph Financial, Inc. ("Joseph Financial") acted as unregistered brokers on behalf of investment funds ("EquiAlt Funds") managed by EquiAlt, LLC ("EquiAlt"). They raised at least $4.85 million from the unregistered offer and sale of securities of the EquiAlt Funds to more than 50 retail investors located in Arizona, California, Texas, and Oregon. From these sales, the Defendants received approximately $1.1 million in transaction-based sales commissions.

2. At all relevant times, the Defendants were not registered as broker-dealers with the Commission or associated with a registered broker-dealer. EquiAlt's securities

COMPLAINT                                                          1

offerings were not registered with the Commission and there was no applicable exemption from registration for these offerings.

3. By engaging in this conduct, the Defendants each violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. §§ 77e(a) and 77e(c)], and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. § 78o(a)(1)].  Unless enjoined, the Defendants are reasonably likely to continue to violate the federal securities laws.  The Commission also seeks against all Defendants disgorgement of ill-gotten gains along with prejudgment interest thereon, and civil money penalties.

## DEFENDANTS

4. **Robert Joseph Armijo,** 40, is a resident of La Mesa, California.  During the relevant period, Armijo operated and controlled Joseph Financial.  Armijo is not currently registered with the Commission or the Financial Industry Regulatory Authority ("FINRA"), nor was he during the time period relevant to the allegations contained herein.

5. **Joseph Financial, Inc.** is a California corporation located in San Diego, California.  During the relevant period, Armijo owned and controlled Joseph Financial, and treated it as his alter ego.  Joseph Financial has never been registered with the Commission or FINRA.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)]; and Sections 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

7. This Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of California because Defendants transacted business in this District relating to the sale of the EquiAlt Funds.

8. In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, made use of the means or

instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## FACTUAL ALLEGATIONS

9. From at least 2016 through February 11, 2020 (when the Commission filed an emergency action against EquiAlt and others), EquiAlt orchestrated a massive Ponzi scheme relating to its management of the EquiAlt Funds. The scheme involved at least 1,100 investors who invested approximately $170 million in the EquiAlt Funds.

### A. The EquiAlt Ponzi Scheme and Other Fraudulent Conduct

10. At all relevant times, Brian Davison controlled EquiAlt, whose primary business purpose was the management of the EquiAlt Funds. Davison, along with EquiAlt's Vice President Barry Rybicki, told investors that the EquiAlt Funds would use their money to purchase real estate in distressed markets throughout the United States and that these real estate investments would generate revenues sufficient to pay investors interest rates of 8% to 10% per annum on their investments. The EquiAlt Funds, however, were unprofitable almost from inception.

11. Without sufficient revenues to pay the money owed to investors, EquiAlt soon resorted to fraud, using new investor money to pay the interest promised to existing investors in a Ponzi like scheme. EquiAlt perpetuated this fraud for several years until the Commission filed its emergency action in February 2020 and the Court entered a temporary restraining order, an asset freeze, and appointed a receiver over the EquiAlt Funds.

12. In furtherance of this fraudulent scheme, EquiAlt, Rybicki, and Davison also made numerous material misrepresentations and omissions to investors in connection with the offer and sale of investments in the EquiAlt Funds.

### B. EquiAlt Made Material Misrepresentations to Investors

13. EquiAlt, through a network of unregistered sale agents including the Defendants in this action, sold investors 3-year or 4-year term debentures issued by the EquiAlt Funds providing a fixed annual return of 8% to 10%. Many of the investors

were elderly, retired, and used their IRAs to invest in the EquiAlt Funds.  Moreover, many of the investors were unaccredited or unsophisticated in that they lacked knowledge or expertise in financial matters, were not capable of evaluating the merits or risks of the investment, and were not otherwise capable of bearing the economic risks of the investment.  Many of the investors in this Ponzi scheme were attracted to investments in the EquiAlt Funds by representations that the investments were secure, low risk, and conservative.

14. In addition to the misrepresentations about the safety and security of investing in the EquiAlt Funds, EquiAlt made numerous other misrepresentations and omissions concerning the use of investor proceeds, registration with the Commission, compliance with applicable laws, and management of the EquiAlt Funds.  In particular, EquiAlt misrepresented, or failed to disclose adequately to investors, that their investment proceeds were being used to pay substantial commissions to unregistered sales agents.  Moreover, investors were told that 90% of their funds would be used to invest "in property."  Yet, less than 50% of investor funds were actually used for that purpose.  In fact, most of the remaining funds were used for improper purposes such as the payment of millions of dollars in undisclosed fees and bonuses to EquiAlt, Davison and Rybicki.

C. **Defendants Offered and Sold EquiAlt Securities**

15. Over a period of several years, EquiAlt recruited a network of unregistered sales agents throughout the United States to sell the fixed rate debentures issued by the EquiAlt Funds.  EquiAlt paid these unregistered sales agents, including the Defendants, commissions ranging from 6-12% of the amount invested in the EquiAlt Funds.

16. EquiAlt's debentures are securities within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act which defines a "security" to include, among other things, "any note, . . . bond, [or] debenture."  Moreover, EquiAlt's debentures fall under Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act which define "security" to include, among other things, "investment

COMPLAINT                                                    4

1  contracts." In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946), the Supreme Court
2  defined an investment contract as (1) an investment of money, (2) in a common
3  enterprise, (3) with the expectation of profits produced solely by the efforts of others.
4  EquiAlt's investments clearly involve an "investment of money." Here, the investors had
5  no role in selecting or analyzing the underlying properties and the expected profitability
6  of the investments was derived solely from the efforts of EquiAlt, Davison, and Rybicki.
7  Once investors sent their money, they had no control over how EquiAlt would use it. As
8  such, EquiAlt's investments are securities within the meaning of Section 2(a)(1) of the
9  Securities Act and Section 3(a)(10) of the Exchange Act.

10         17.    Armijo first became involved with EquiAlt in 2013 when he and another California based sales agent, who was also acting as an unregistered broker, agreed to share commissions paid by EquiAlt in connection with the sale of EquiAlt Funds' securities. This commission sharing arrangement continued for several years until Armijo and this other sales agent terminated their business relationship in early 2016.

        18.    Shortly thereafter, Armijo contacted Rybicki to discuss the possibility of Armijo selling EquiAlt Funds' securities on his own. Rybicki agreed to work directly with Armijo to market and sell EquiAlt Funds' securities. Pursuant to their agreement, Armijo's company, Joseph Financial, began receiving commissions of 10% for selling EquiAlt Funds' securities. Armijo also received bonuses if his sales of EquiAlt Funds' securities exceeded a specific amount during a particular month. Armijo also received commissions of up to 6% when investors he had solicited renewed their investments in the EquiAlt Funds.

        19.    Between February 2016 through February 2020, Armijo regularly participated in multiple securities transactions involving the EquiAlt Funds at key points in the chain of distribution. More specifically, Armijo repeatedly solicited investors for EquiAlt's Funds; communicated directly with investors about EquiAlt's Funds; described the merits of the EquiAlt Funds' securities to investors; reassured investors about the risk

of investing in the Funds or of EquiAlt's business model; and received transaction-based compensation.

20.   In fact, after reviewing their assets and investment time horizon, Armijo described the merits of investing in the EquiAlt Funds to investors, frequently describing the investments as low-risk. In addition to describing the investment as low-risk, Armijo explained important facts concerning EquiAlt's business model as well as other material aspects of the investment, such as the annual interest rate paid to investors and the investment options offered by the EquiAlt Funds (which included a monthly interest payment option or a growth option offering a higher return on investment). While acting as an unregistered broker, Armijo repeatedly recommended the EquiAlt Funds to his clients claiming that the investment supposedly offered liquidity in three years, provided monthly income, and involved a "debt-free real estate fund."

21.   In addition to recommending investments in the EquiAlt Funds, Armijo also assisted investors with most aspects of the securities sales transactions. Among other things, he provided offering documents and marketing materials prepared by EquiAlt to prospective investors and helped process the paperwork necessary to complete the investment such as the subscription agreements executed by investors. He also participated in joint telephone calls between prospective investors and representatives of EquiAlt concerning the investment opportunity and even attempted to negotiate higher interest rates from EquiAlt for his clients. Ultimately, Defendants raised about $4.85 million from the unregistered offer and sale of securities of the EquiAlt Funds to more than 50 retail investors. From these sales, the Defendants received approximately $1.1 million in transaction-based sales commissions.

22.   Although EquiAlt purportedly offered its securities under Rule 506(b) of Regulation D, a "safe harbor" under Section 4(a)(2) of the Securities Act, the safe harbor did not apply because EquiAlt engaged in general solicitation or advertised to market the securities. Furthermore, EquiAlt did not provide an audited balance sheet or financial statements to the unaccredited EquiAlt investors, and the information provided was false

and misleading. Consequently, the Defendants engaged in unregistered securities transactions for which an exemption from registration did not apply.

23. Moreover, when the Defendants sold the EquiAlt Funds' securities they held no securities licenses, were not registered with the Commission as broker-dealers, and were not associated with a registered broker-dealer.

## CLAIMS FOR RELIEF

## COUNT I

## Violations of Sections 5(a) and 5(c) of the Securities Act

24. The Commission repeats and realleges paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offered and sold by the Defendants as described in this Complaint and no exemption from registration existed with respect to these securities.

26. From approximately 2016 and continuing through approximately February 2020, the Defendants directly and indirectly:

    (a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

    (b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security;

without a registration statement having been filed or being in effect with the Commission as to such securities.

27. By reason of the foregoing the Defendants violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

## Violations of Section 15(a)(1) of the Exchange Act

28. The Commission repeats and realleges Paragraphs 1 through 23 of this Complaint as if fully set forth herein.

29. From approximately 2016 and continuing through approximately February 2020, the Defendants, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when they were not associated with an entity registered with the Commission as a broker-dealer.

30. By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.

### Permanent Injunctive Relief

Issue a Permanent Injunction enjoining the Defendants from violating Sections 5(a) and 5(c) of the Securities Act and Section 15(a)(1) of the Exchange Act.

### B.

### Disgorgement and Prejudgment Interest

Issue an Order directing Defendants Armijo and Joseph Financial to disgorge on a joint and several basis all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

### C.
### Civil Money Penalties

Issue an Order directing the Defendants Armijo and Joseph Financial to pay civil money penalties on a joint and several basis pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

### D.
### Further Relief

Funding such other and further relief as may be necessary and appropriate.

### E.
### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

### DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury in this case.

Dated: June 14, 2021

Respectfully submitted,

s/ Alise Johnson
Alise Johnson
Attorney for Plaintiff
Securities and Exchange Commission
Email: johnsonali@sec.gov
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Florida Bar No. 0003270